UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. |
| **AMY NESBIT BRASSETT** | **04-13908** |
| DEBTOR | |
| **AMY NESBIT BRASSETT** | ADVERSARY NO. |
| PLAINTIFF | **04-1160** |
| V. | |
| **MICHAEL R. BRASSETT,** **LEO L. BRASSETT, SR.,** **METRO BINGO OF LAFAYETTE, INC.,** **METRO BINGO OF LAFAYETTE, JOINT VENTURE,** **320 INC. and 320 PARTNERSHIP** | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The plaintiff/debtor, Amy Nesbit Brassett, moved for partial summary judgment against her former husband, Michael R. Brassett; Metro Bingo of Lafayette, Inc. ("MBI");[1] and the other defendants[2]. The debtor seeks a declaration concerning her ownership of certain assets of the former community[3]. Based upon the stipulations of the

---

[1] Since the date on which the motion for partial summary judgment was filed, MBI and Michael Brassett each filed chapter 11 petitions in this Court, which were assigned Case Nos. 05-12952 and 05-14461, respectively. MBI's case was converted to a chapter 7 on October 24, 2005. The court granted stay relief on motion of Amy Brassett and Metro Bingo of Lafayette, Joint Venture in both cases to conclude this adversary proceeding.

[2] The debtor settled her claims in this adversary proceeding against Leo Brassett, Sr., 320 Partnership and 320 Inc. and against Metro Bingo of Lafayette, Joint Venture on September 6, 2005 and September 8, 2005, respectively.

[3] The Court's September 30, 2005 Order restyled the debtor's motion as a Motion for Final Summary Judgment. Also, in a September 26, 2005 Order following a scheduling conference, the Court allowed the

parties and the pleadings, attached exhibits, depositions and affidavits submitted in support of the motion, the Court makes the following findings of fact and conclusions of law.[4]

### **Findings of Fact**[5]

1. Amy and Michael Brassett were married in April 1980,[6] and divorced effective October 23, 2000.[7] Throughout their marriage, the Brassetts resided and were domiciled in Louisiana. Therefore, the community property laws of Louisiana governed the marriage.[8]

2. While the Brassetts were married, the community acquired a 33-1/3% interest in Metro Bingo of Lafayette, Joint Venture ("Joint Venture"), pursuant to a September 15, 1989 Joint Venture Agreement between Michael Brassett and Vallery & Nachman, Inc. ("V&N").[9] V&N owned the remaining two-thirds of the Joint Venture. The Joint Venture leased property in Lafayette,

---

debtor, with notice to the other parties in interest, to supplement her summary judgment motion with a memorandum on the Court's authority to fully or partially partition the former community.

[4] At the hearing on the debtor's motion, the Court directed all parties to submit proposed findings of fact and conclusions of law in support of their positions. Only the debtor complied with that order. In accordance with Fed. R. Bankr. P. 7052(a), if any of the Court's finding of fact contain conclusions of law, they should be treated as conclusions of law, and if any of the Court's conclusions of law contain findings of fact, they should be treated as findings of fact.

[5] These findings of facts are based in part on the stipulations of the parties. Stipulations of Parties, Pl. 55, May 20, 2005.

[6] Stipulations of Parties, ¶1.

[7] The parties stipulated that the effective date of the divorce was October 20, 2000. However, the Family Court's May 11, 2001 Judgment references October 23, 2000 as the date the debtor filed her Petition for Divorce, and makes the provisions of the divorce judgment retroactive to that date.

[8] Stipulations of Parties, ¶3.

[9] Stipulations of Parties, ¶4,

Louisiana in which it operated a bingo hall.[10] The Joint Venture Agreement provided Michael Brassett a yearly salary for managing the operation.[11]

3. Michael Brassett incorporated MBI on December 20, 1990, during his marriage to Amy Brassett.[12] On the same date, he assigned his 33-1/3% interest in the Joint Venture to MBI.[13] However, he specifically reserved for himself the compensation for his management duties and services set in the Joint Venture Agreement.[14]

4. Also on December 20, 1990, Michael Brassett, Amy Brassett and the Michael Richard Brassett and Amy Nesbit Brassett Children's Trust ("Trust") formed Brassett Partnership, Ltd. ("BPL").[15] The same day, the Brassetts' marital community transferred 1000 shares of stock in MBI to BPL.[16] According to the BPL articles of partnership, the community of Michael and Amy Brassett owned 90% of the partnership and the Trust owned 10%.[17]

5. In June 2000, the parties settled a lawsuit brought by V & N, the Joint Venture, Leonard Nachman, William Vallery and Eunice Vallery against

---

[10] Lease dated September 7, 1989 between William Vallery and Leonard Nachman, II, Lessors, and Metro Bingo of Lafayette, Joint Venture, Lessee, Stipulated Exhibit B.

[11] Joint Venture Agreement, September 15, 1989, Section 4.1, Stipulated Exhibit C.

[12] Articles of Incorporation, Metro Bingo of Lafayette, Inc, dated December 20, 1990, Stipulated Exhibit D. Stipulations of Parties, ¶8.

[13] Assignment of Joint Venture Agreement dated December 20, 1990, Stipulated Exhibit E.

[14] Assignment of Joint Venture Agreement, ¶4, Stipulated Exhibit E.

[15] Articles of Partnership for Brassett Partnership, Ltd., Stipulated Exhibit F.

[16] Agreement to Form Partnership, p. 2, Stipulated Exhibit G. This document is signed by both Amy and Michael Brassett.

[17] Stipulated Exhibit F, Article VII, Section 7.1.

3

    Michael Brassett and MBI. The settlement terms included relieving Michael Brassett of any managerial duties as described in the Joint Venture Agreement, and assigning these duties to certain other individuals.[18] Brassett was to continue receiving payments from the Joint Venture of $5,000 per month in addition to his percentage distribution from the profits of the business.[19]

6. Amy Brassett filed a petition for divorce on October 23, 2000. On October 24, 2000, the Family Court of East Baton Rouge Parish entered a temporary restraining order prohibiting Michael Brassett from "alienating, encumbering, mortgaging, selling or otherwise disposing of the community property . . . ."[20] A May 11, 2001 Family Court judgment resolving issues of custody, visitation, occupancy of the marital domicile and other matters, contained an injunction against alienation of community property largely identical to the October 24, 2000 Order.[21] The judgment of divorce was signed on May 21, 2001.[22]

---

[18] Affidavits of Julie Nachman, Eunice Vallery and Leonard Nachman, Exhibits 4, 5 and 6 to Debtor's Memorandum in Support of Debtor's Request for Preliminary Injunction, ¶11, Pl. 12.

[19] This amount corresponds to what Michael Brassett was previously receiving pursuant to the Joint Venture Agreement. The agreement originally set Brassett's salary at $30,000 per year. However, the Nachmans and Vallery state in their affidavits that the yearly salary, or "management fee," was subsequently increased to $60,000. Affidavit of Leonard Nachman, ¶7.

[20] October 24, 2000 Order of Family Court for the Parish of East Baton Rouge in matter styled "Amy Brassett v. Michael Brassett," Case Number 137,957, ¶3.

[21] May 11, 2001 Judgment of the Family Court of East Baton Rouge Parish, p. 3. Exhibit 4 to Memorandum in Support of Debtor's Request for Preliminary Injunction.

[22] May 21, 2001 Judgment of Divorce, Stipulated Exhibit J.

7. From November 2000 through March 2005, MBI received the $5,000 monthly fee from the Joint Venture, for a total $260,000.[23] In February 2005, at a meeting of the Joint Venture's partners, two-thirds of the partners voted to discontinue the $5,000 payments effective March 2005, over the objection of Michael Brassett.

8. The Joint Venture's federal tax returns and attached schedules K-1 reflect that the Joint Venture also made the following distributions to MBI:[24]

   a. November 2000 - $6,000; December 2000 - $5,500

   b. 2001 - $71,814

   c. 2002 - $66,014

   d. 2003 - $80,000

   e. 2004 - $62,298.[25]

9. Both the monthly fees and other distributions MBI and Michael Brassett received from the Joint Venture were deposited into a bank account in MBI's name.[26] At all times, Michael Brassett had exclusive control and check writing authority over the MBI account. Amy Brassett had no control or

---

[23] Stipulations of Parties, ¶10. The Stipulations indicate that the Joint Venture stopped paying Michael Brassett the management fee in approximately January 2005. However, Michael Brassett has alleged that he received the management fee until March 2005. *See* paragraph 4 of Stipulated Exhibit N (the Petition for Damages entitled "Michael R. Brassett v. Julie P. Nachman, Eunice B. Vallery, Metro Bingo of Lafayette, Joint Venture and Vallery & Nachman, Inc.," Suit No. 532,186, Sec. 8, 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana).

[24] These totals do not include any of the $5,000 monthly fees.

[25] The Stipulations estimate the 2004 dividend at $80,000. However, the actual 2004 schedule K-1 for the Joint Venture reflects that the distribution was $62,298.

[26] Stipulations of Parties, ¶13.

      check writing authority over that account.[27]  Michael Brassett does not maintain any personal bank accounts in his own name.[28]

10. After the effective date of the divorce, Michael Brassett used funds in the MBI account to make monthly payments on the mortgage loan secured by the former marital domicile, for which he has the exclusive right of occupancy.[29] He also has used the MBI account to pay personal living expenses, including automobile loan payments and expenses, utilities, clothing, food and expenses associated with other business ventures.[30]  Although Michael Brassett testified in his deposition that he also used some of the funds in the MBI account to pay community debts such as credit cards, lines of credit, repairs to the marital home and insurance premiums, he offered no documentary evidence identifying the specific debts he claims to have paid, or the amounts of the alleged payments.[31]

11. In Michael Brassett's affidavit in opposition to this motion for summary judgment, the defendant stated that any funds he received from MBI were salary and earnings for his personal services, and not dividends.[32]  However, his federal and state income tax returns for the years 2001, 2002 and 2003 list

---

[27] Stipulations of Parties, ¶14.

[28] Stipulations of Parties, ¶15.

[29] Stipulations of Parties, ¶16. The May 21, 2001 Judgment of the Family Court ordered Michael Brassett to pay the monthly mortgage notes and waived his right to reimbursement of those payments.

[30] Stipulations of Parties, ¶16.

[31] Transcript of March 29, 2005 deposition of Michael Brassett (hereafter "Deposition of Michael Brassett"), pp. 204-216.

[32] Affidavit of Michael Brassett, ¶'s 7 and 9, Pl. 139.

no wages or earnings from any entity. Moreover, no W-2 or 1099 forms suggesting that he had been compensated for his services were attached to those returns.[33] In his deposition, Brassett did not enumerate any specific duties or functions he performed for the Joint Venture after June 2000, other than perhaps making monthly telephone calls to managers, to check on their activities.[34]

12. From November 1, 2000 through December 31, 2003, Michael Brassett received $65,183 from 320 Partnership, according to the tax returns of 320 Partnership for the years 2001 through 2003[35] and Michael Brassett's personal tax returns for the years 2001, 2002 and 2003.[36]

13. Michael Brassett acquired his interest in 320 Partnership and 320 Inc. in 1982 during his marriage to the debtor.[37] He listed a 20.625% interest in 320 Partnership and an interest in 320, Inc.[38] as community property on the

---

[33] Attachments 1, 2, and 3 to debtor's Supplemental Response to Opposition filed by Michael Brassett to Motion for Partial Summary Judgment, Pl. 149.

[34] Deposition of Michael Brassett, pp. 195-196, Pl. 103.

[35] Exhibit 2 to debtor's Statement of Material Facts Not in Dispute, Pl. 109.

[36] Attachments 1, 2 and 3 to debtor's Supplemental Response to Opposition filed Michael Brassett to Motion for Partial Summary Judgment, Pl. 149.

[37] The 2001 federal tax return of 320 Partnership states that it commenced existence on June 29, 1982. Pl. 109.

[38] 320, Inc. owns a 2% interest in 320 Partnership and is the general partner. Michael and Leo Brassett each own a 20.625% interest in 320 Partnership. A Class B partner, Barry McGee, owns a five percent interest in the partnership and the remaining interest in the partnership is owned by 20 Class C partners. Deposition of Michael Brassett, p.40, lines 8-24, p. 41, lines 1-25, Pl. 103. Amy and Michael Brassett's marital community owns 50% of the stock of 320 Inc. Leo Brassett owns the remaining half. Deposition of Michael Brassett, p. 23, lines 22-25, p.24, lines 1-25, p. 25, lines 1-16, Pl. 103.

7

        Detailed Descriptive List filed on his behalf in the Family Court proceedings.[39]

14. Michael Brassett testified in his deposition that he never received any compensation for services rendered to 320 Partnership, and never received a form W-2 or 1099 from 320, Inc.[40] Neither the tax returns of Michael Brassett nor those of 320 Partnership or 320, Inc. reflect that Michael Brassett received any salary or wages from either entity.[41] However, Michael Brassett did testify that he took funds from 320 Partnership to pay personal expenses.[42]

15. The marital community of Amy Brassett and Michael Brassett has never been partitioned.

## Conclusions of Law

1. When a motion for summary judgment is made and supported by pleadings, depositions, affidavits and other materials as provided for in Fed. R. Bankr. P. 7056(c), as the debtor's motion has been, the opposing party may not "rest upon the mere allegations or denials of the adverse party's pleading." Fed. R. Bankr. P. 7056(e). The opposition must be supported by the same types of materials providing specific facts to show that there is a genuine issue for trial. *Id*. Failure to properly oppose the motion will result in summary judgment, if it is supported by law, against the opposing party. *Id*.

---

[39] Exhibit 6 to Memorandum in Support of Debtor's Request for Preliminary Injunction, Pl. 12.

[40] Deposition of Michael Brassett, p. 31, lines 19-25, and p.32, lines 1-21, Pl. 103.

[41] Tax returns of 320 Partnership, Pl. 109; tax returns of Michael Brassett, Pl. 149, attachments 1, 2 and 3.

[42] Deposition of Michael Brassett, p. 237, lines 1-10, Pl. 103.

2.  Michael Brassett and MBI oppose the debtor's motion with little more than "mere allegations and denials." Their opposition to the motion, affidavit of Michael Brassett and objection to the debtor's statement of undisputed facts are sparse on specific facts and rich in unsupported assertions. Most of the response to the debtor's statement of undisputed facts is comprised of simple denials of the debtor's factual assertions. Curiously, many of the denials contradict facts to which Michael Brassett and MBI previously stipulated.[43] In any case, these responses are insufficient to prevent summary judgment under Rule 7056(e).

3.  As of the date Amy Brassett filed her bankruptcy, the couple had not partitioned the property of their former community, which terminated on October 23, 2000. Therefore, all the property of their former marital community became property of the debtor's bankruptcy estate. 11 U.S.C. §541(a)(2); *In re Robertson*, 203 F.3d 855, 861 (5th Cir. 2000); *In re Hendrick*, 45 B.R. 976, 983-4 (Bankr. M.D. La. 1985). The Court must decide whether, and to what extent, the funds Michael Brassett received after termination of the community from the Joint Venture, MBI, 320 Partnership and 320, Inc. were property of the former community of Amy and Michael Brassett.

---

[43] For example, Michael Brassett and MBI deny the debtor's statement that the stock of MBI is community property. However, ¶8 of the Stipulations states that Brassett incorporated MBI during the existence of his marriage to the debtor. Brassett and MBI also deny that Michael Brassett had no personal bank account and used the MBI account to pay personal bills and obligations. Yet, ¶¶15 and 16 of the parties' Stipulations specifically recite that Michael Brassett did not maintain a personal bank account and used the MBI account to pay personal living expenses. Factual stipulations that are freely and fairly entered into are "controlling and conclusive" and courts are bound by them. *A. Duda & Sons Cooperative Assoc. v. United States*, 504 F.2d 970, 975 (5th Cir. 1974).

4. Under Louisiana Civil Code article 2338, community property comprises, in relevant part, all property acquired during the existence of the legal regime through the effort, skill or industry of either spouse, and the natural and civil fruits of community property. Moreover, assets in a spouse's possession during the existence of the community regime are presumed to be community. La. Civ. Code art. 2340.

5. Amy Brassett and Michael married in April 1980 and divorced effective October 23, 2000.[44] Thus, the interests of Michael Brassett and Amy Brassett in the Joint Venture, MBI, Brassett Partnership, Ltd., 320 Partnership and 320, Inc., all acquired before October 23, 2000, were community property when their community property regime terminated.

6. After a community property regime terminates and until the community is partitioned, laws governing co-ownership apply to the former community property. La. Civ. Code art. 2369.1. After Amy and Michael Brassett's community terminated, each became the owner of an undivided one-half interest in their former community property and its fruits and products. La. Civ. Code art. 2369.2. Moreover, each spouse owes an accounting to the other spouse of the community property under his or her control at the termination of the community regime. La. Civ. Code art. 2369.

7. The Comments to article 2369.2 provide cross reference to La. Civ. Code art. 551, dealing with usufructuary rights, for a definition of "fruits." Fruits are defined as "things that are produced by or derived from another thing without diminution of its substance." Civil fruits are "revenues derived from a thing by

---

[44] The community terminated as of the effective date of the divorce. La. Civ. Code art. 2356.

10

operation of law or by reason of a juridical act, such as rentals, interest and certain corporate distributions." Thus, after their divorce Amy Brassett and Michael Brassett owned in indivision *both* their equity interests in the Joint Venture, MBI, BPL, 320 Partnership and 320, Inc., *and* the civil fruits of those entities.[45]

8. Jurisprudence under the Louisiana Civil Code articles addressing ownership in indivision[46] consistently holds that owners in indivision who come into possession of the fruits or products of the co-owned property must distribute those fruits to the other owners. *Elwood Oil Co. v. Anderson*, 655 So.2d 694, 698 (La. App. 2d. Cir. 1995) (co-owner has right of action against other co-owner to recover his share of the fruits or products of the property held in indivision). So any of the funds Michael Brassett received from the Joint Venture, MBI, BPL, 320 Partnership or 320, Inc. that constituted fruits of those community assets should have been shared one-half with the debtor and she had a right to an accounting and recovery of that share from Michael Brassett at the time she filed her bankruptcy case.

### Classification of the Monthly Fees from the Joint Venture

9. Michael Brassett maintains that the $5,000 monthly fees he received from the Joint Venture after the divorce were his separate property, and not the civil fruits of any community property, because they were his salary or earnings. However, the evidence established that he did not perform any labor or services

---

[45] For example, after a community is dissolved, each former spouse is entitled to one-half of the dividends attributable to stock that was property of the former marital community. *See e.g., Lane v. Lane*, 375 So.2d 660, 679 (La. App. 4th Cir. 1979); *Malone v. Malone*, 243 So.2d 100, 102 (La. App. 1st Cir. 1971).

[46] La. Civ. Code arts. 797 to 818.

11

for the Joint Venture after the divorce. The affidavits of Eunice Vallery and Leonard and Julie Nachman demonstrate that the June 2000 agreement relieved Michael Brassett of his duties as manager of the Joint Venture's bingo operations. Moreover, Michael Brassett's federal and state income tax returns for the years 2001 through 2003 do not reflect that he received wages or salaries from any entity, as a result of his labor or services. Indeed, Michael Brassett conceded in his deposition that his only "service" to the Joint Venture after June 2000 was an occasional telephone call to the managers of the business to check on what they were doing. Since he had no official management duties at that time, this activity amounted to no more than what an equity holder in a business venture would do.

10. No Louisiana statutes explicitly govern joint ventures. *Florida Universal Financial Corp. v. Cox*, 493 So.2d 710, 713 (La. App. 2d. Cir. 1986). The limited jurisprudence dealing with joint ventures generally applies Louisiana partnership law to joint ventures. *Id.* Unfortunately, the reported decisions on partnerships are not especially instructive concerning the facts of this dispute. A more reasonable analysis to determine the correct characterization of the $5,000 monthly payments to Michael Brassett after June 2000 lies in principles applicable to corporate distributions to shareholders.

11. Corporate law recognizes the concept of the *constructive dividend*, a "corporate disbursement that is a dividend in the contemplation of law, though not called such by the corporation making the disbursement." *United States v. Mews*, 923 F.2d 67, 68 (7th Cir. 1990). The logic underlying this theory is that

       disbursements that are not expenditures benefiting the corporation must be dividends, because if the disbursement does not benefit the corporation, it must benefit the shareholders. *Id.*

12. Thus, since the $5,000 monthly payment to Michael Brassett ceased to benefit the Joint Venture after June 2000 when his managerial duties ended as a result of the settlement agreement with his partners, it was not an operating expense analogous to a salary, but rather a constructive dividend that benefited only Brassett. Accordingly, it could no longer properly be treated as compensation after June 2000. The distribution is more properly characterized as a payment in accordance with Brassett's and MBI's contractual rights under the Joint Venture Agreement – thus, a constructive dividend. The $5,000 monthly payment was, therefore, not Michael Brassett's separate property.

### Simulated Transfers and Alter Ego Theory

13. Michael Brassett's opposition to this motion and the supporting affidavit allege that any interest the community had in the Joint Venture was transferred to MBI, and thence to BPL.[47] Amy Brassett argues that all transfers of the community's interest in the Joint Venture subsequent to the date the Joint Venture began were simulations and therefore null and void. She also invites the Court to conclude that MBI was merely the alter ego of Michael Brassett, so that all the money deposited into MBI's bank accounts was community property.

14. The court need not consider either alternative argument. Both MBI and BPL came into existence while Amy and Michael Brassett were married. The parties

---

[47] Opposition to Motion for Partial Summary Judgment filed by Michael Brassett, ¶3, Pl. 137; Affidavit of Michael Brassett, ¶5, Pl. 139.

      stipulated that the community owned a 33-1/3% interest in the Joint Venture. MBI was incorporated, and that one-third interest was assigned to MBI, during the existence of the community. MBI and the one third interest in the Joint Venture transferred to it were community property. La. Civ. Code art. 2338.

15. BPL was formed during the existence of the community. The Agreement to Form Partnership specifically states that the general partners of BPL are Michael Brassett and Amy Brassett.[48] The 1000 shares of MBI stock transferred to BPL are characterized as "Property of Michael Richard Brassett and Amy Nesbit Brassett" on page two of that agreement. Thus, both BPL and any interest it owned in MBI were community property. La. Civ. Code art. 2338.

16. Therefore, whether the transfers of the community's Joint Venture interest were simulations or sham transactions, or whether MBI was Michael Brassett's alter ego, is of no significance. All the entities at issue were owned by the community at its termination, and remained property of the unpartitioned former community when Amy Brassett filed bankruptcy.

17. However, based on the documents creating BPL, the community of Michael and Amy Brassett owns only a 90% interest in the partnership. The remaining ten percent is owned by the limited partner, the Trust. The debtor has not disputed that she signed the Agreement to Form Partnership nor has she shown any irregularities in that document or the BPL articles of partnership. Instead, Amy asserts that Michael Brassett's continued possession, control and use of all

---

[48] Agreement to Form Partnership, Stipulated Exhibit G, ¶1.

distributions from the Joint Venture evidences that had no intent to transfer his interest in the Joint Venture to any other entity, including BPL.

18. Under Louisiana law, determining that a transfer was a simulation or sham requires a finding that the parties had no good faith intent to transfer the property in question. *Owen v. Owen*, 336 So.2d 782, 786 (La. 1976). Summary judgment is seldom appropriate for determinations based on subjective facts such as intent. *Jones v. Estate of Santiago*, 870 So.2d 1002, 1006 (La. 2004); *Guillory v. Domtar Ind., Inc.*, 95 F.3d 1320, 1326 (5th Cir. 1996). The Court concludes that there remains a dispute over whether Michael and Amy Brassett had the requisite intent to form BPL and transfer to it the MBI stock the community owned. Thus, this limited issue is not ripe for summary judgment.

## 320 Partnership and 320, Inc.

19. There is no dispute that Michael Brassett's 20.625% interest in 320 Partnership and the community's 50% interest in 320 Inc. were acquired during the marriage. Michael Brassett offers no support for any finding that these interests were ever sold, assigned or transferred.

20. Michael Brassett's affidavit disputes that he received "dividends" from 320 Partnership.[49] However, the tax returns of 320 Partnership for the tax years 2001, 2002 and 2003, as well as Brassett's personal tax returns for the same years, reflect distributions to him totaling $65,183 during that time. Brassett also admitted in his deposition that he received no compensation for services

---

[49] Affidavit of Michael Brassett, ¶10, Pl. 139. Michael Brassett was not technically incorrect, because distributions from a partnership are not dividends, which are distributions of corporate profits to shareholders. A dividend is a "portion of a company's earnings or profits distributed pro rata to its shareholders . . . ." *Black's Law Dictionary* 512 (8th ed. 2004).

from 320 Partnership or 320 Inc. during the years in question. Consequently, the distributions to him reflected on the tax returns can only be attributable to a partnership interest that was property of the former community and is now property of the bankruptcy estate of Amy Brassett.[50]

### Allocation of Assets

21. To summarize, the following assets were community property of the Michael Brassett/Amy Brassett community: a 33-1/3% interest in the Joint Venture; the $5,000 monthly fees Michael Brassett received from the Joint Venture; 100% of the stock of MBI; a 90% interest in BPL; a 20.625% interest in 320 Partnership; a 50% interest in 320, Inc.; and all fruits of the Joint Venture, MBI, BPL, 320 Partnership and 320, Inc. Consequently, after their divorce, Amy Brassett and Michael Brassett each owned an undivided one-half interest in these assets and their fruits or proceeds. At the time Amy Brassett filed her bankruptcy case, these unpartitioned co-owned interests became property of Amy's bankruptcy estate.

22. Moreover, since the proceeds from these assets all came into the sole possession of Michael Brassett after the divorce, either directly or through his exclusive control of MBI and its bank accounts, he was obligated to account for these fruits to co-owner Amy Brassett and turn over her share. According to the facts in the record, the accounting is as follows:

---

[50] Under the terms of the Joint Compromise among the debtor, Leo Brassett, Sr., 320 Partnership and 320 Inc., which the Court's September 6, 2005 Order approved, the debtor transferred her interest in 320 Partnership and 320 Inc. to her children with Michael Brassett from the date of the settlement forward. Joint and Mutual Settlement and Compromise, ¶2(F), Pl. 238.

|  |  |
|---|---|
| $5,000 monthly fees from Joint Venture (November 2000 through March 2005) | $260,000 |
| Other distributions from Joint Venture (November 2000 through 2004) | $291,626 |
| Distributions from 320 Partnership (November 2000 through 2003) | $65,183 |
| Total | $616,809 |

23. From the $291,626 figure that represents Joint Venture distributions other than the monthly fees[51], ten percent, or $29,162.20, must be deducted for the Trust's potential interest. The remainder of the total proceeds attributable to community property, or $587,646.40, was co-owned by Amy Brassett and Michael Brassett after the divorce. When Amy Brassett filed her bankruptcy case, these proceeds became property of her bankruptcy estate.

24. Although Michael Brassett argued in his opposition that he is entitled to reimbursement because he used some of the money to pay community debts, he did not support his claim with specific evidence. Moreover, even if he had properly supported his argument, the Court has disallowed Michael Brassett's proof of claim for his reimbursement.[52]

25. The Court grants the debtor summary judgment, in part, declaring that, with the exception of the Trust's 10% interest in BPL, all of the community property outlined in paragraph 21 above is property of the debtor's bankruptcy estate. The Court denies summary judgment, in part with respect to the validity of the Trust's interest BPL.

---

[51] Michael Brassett retained his individual right to receive the $5,000 monthly fees when he assigned the community's interest in the Joint Venture to MBI.

[52] August 26, 2005 Order, Pl. 112.

26. The Court further grants the debtor summary judgment against Michael Brassett in the amount of $293,823.20, representing her one-half interest in the fruits of the former community property during the period from November 1, 2000 through March 2005 not previously turned over to her by Michael Brassett.

27. Moreover, this Court's jurisdiction over all of the unpartitioned property of Amy and Michael Brassett's former community is exclusive. *Collier on Bankruptcy*, ¶541.13[4], p. 541-84 (15th ed. rev. 2005). Therefore, the Court has the authority to partition the interests of Amy Brassett and Michael Brassett in that property. The Court grants summary judgment partitioning *only* the community property outlined in paragraph 21 above (with the exception of the Trust's potential 10% interest in BPL) as follows:

   (a) Amy Brassett and Michael Brassett each hold a one-sixth interest in the Joint Venture;
   (b) Amy Brassett and Michael Brassett each hold a 50% interest in MBI;
   (c) Amy Brassett and Michael Brassett each hold a 45% interest in BPL;
   (d) Amy Brassett and Michael Brassett each hold a 10.313% interest in 320 Partnership and a 50% interest in 320 Inc., with Amy's interest being owned by her children with Michael Brassett from the date of the settlement with Leo Brassett, Sr., 320 Partnership and 320 Inc. ("Settlement") forward; and
   (e) Amy Brassett and Michael Brassett are each entitled to one-half of the fruits attributable to the Joint Venture, MBI, BPL, 320 Partnership and 320 Inc., except that Amy's interest in the fruits of 320 Partnership and 320 Inc. from the date of the Settlement forward belong to her children with Michael Brassett.

28. The Court will prepare a judgment consistent with these findings and conclusions.

Baton Rouge, Louisiana, November 9, 2005.

**<u>s/ Douglas D. Dodd</u>**
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE